**In re GRAND JURY INVESTIGATION.**

**Bruce HARVEY, Appellant.**

No. 85–8513
**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Aug. 15, 1985.

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

Before KRAVITCH, JOHNSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

A federal Grand Jury sitting in the Northern District of Georgia is investigating one Howard Carrera for alleged violations of the Internal Revenue Code. Witness Bruce Harvey is an attorney, who is currently representing Mr. Carrera. Mr. Harvey was subpoenaed to testify before the Grand Jury and so appeared on May 14, 1985. Alleging an attorney-client privilege and attorney work-product privilege, Mr. Harvey declined to answer questions regarding the following:

(1) Legal fees received by Mr. Harvey for representation of Mr. Carrera.

(2) Whether Mr. Harvey handled any loan transactions for Mr. Carrera.

(3) Whether Mr. Harvey traveled to Florida to receive or transport money on behalf of Mr. Carrera.

(4) The deposit in 1980 of approximately $470,000 in cash into Mr. Harvey's attorney trust account and subsequent disbursement of these funds to a corporation known as Yonah Parks, Inc.

Following his refusal to answer these questions, Mr. Harvey appeared before the Honorable Robert H. Hall, District Judge. Evidence was presented to the District Court and oral arguments were heard. Testimony was presented reflecting the following. Accountant William Carroll was hired by Howard Carrera in 1980 to perform bookkeeping and accounting services. Carrera was at the time an officer in a

development company known as Yonah Parks, Inc. In examining Mr. Carrera's and Yonah Parks' books and records, Mr. Carroll noticed abnormally large amounts of cash flowing from Bruce Harvey's trust account to Yonah Parks, Inc. Mr. Carroll also discovered records reflecting large cash deposits by Carrera into the Harvey trust account.

Mr. Carroll asked Carrera how he wanted his records to reflect these transactions. Carrera instructed him to set up a special account from the Harvey trust account. Carroll prepared the books to reflect the money as a loan from the Harvey trust account to Yonah Parks, Inc. When asked by Carroll why he was conducting business in this manner, Carrera indicated he had been advised by some people in Florida to run the money through an escrow to prevent any disclosure.

Stephen Jeffrey Cook, an IRS Special Agent, testified that he examined bank records reflecting deposits and withdrawals from Mr. Harvey's attorney trust account and compared those records with the Yonah Parks deposit records. Mr. Cook was able to conclude that there were cash deposits to the Harvey trust account on behalf of Yonah Parks in 1980 of $472,150.00, and cash deposits of $44,900.00 in 1981. Cook further testified that in 1980 the checks to Yonah Parks drawn on the Harvey escrow account totaled $447,604.00. When Mr. Harvey indicated he would refuse to answer questions relating to the above, the court found him in contempt.

We affirm the district court's contempt order, finding that neither the attorney-client privilege nor the attorney work-product privilege is applicable to the current grand jury proceedings.

■ Appellant first asserts that the government must make a preliminary showing of relevance and need prior to the enforcement of the instant Grand Jury subpoena and cites the recent Second Circuit decision in *In Re Grand Jury Subpoena Served Upon Doe,* 759 F.2d 968 (2d Cir. 1985). This court has conclusively rejected the requirement that the government make a preliminary showing of relevance and need before an attorney can be required to appear before a Grand Jury. *In re Grand Jury Proceedings In Matter of Freeman,* 708 F.2d 1571, 1575 (11th Cir.1983). Nor does the Sixth Amendment require a preliminary showing of relevance or need before enforcement of a Grand Jury subpoena.

■ Appellant next argues that questions regarding legal fees received from Carrera are subject to the attorney-client privilege. Appellant further alleges that the fee information relating to his client is subject to the "last link" exception adopted in *In re Grand Jury Proceedings (Jones),* 517 F.2d 666 (5th Cir.1975). It is well settled law in this Circuit that matters involving the receipt of fees from a client are not generally privileged. *In re Slaughter,* 694 F.2d 1258, 1260 (11th Cir.1982). The narrow exception carved out in *In re Grand Jury Proceedings (Jones), supra,* obtains when the disclosure of the client's identity by his attorney would supply the last link in an existing chain of incriminating evidence likely to lead to the client's indictment. The exception is applied because the client's identity and a fee constitutes a confidential communication. This exception is not applicable to the case *sub judice* because the identity of the client is known, as well as the existence of the fee. What is unknown is the amount of the fee and such information is properly discoverable by a Grand Jury.

■ Appellant next argues that the information sought by the Grand Jury is privileged from disclosure as attorney work-product information. The work-product doctrine extends only to work product made for the purpose of facilitating the rendition of legal services to the client. The questions propounded to the appellant concerned purely financial transactions be-

# 1488

tween appellant and his client. Thus, these questions do not seek information of appellant concerning actions taken in a legal capacity, but rather focus on the attorney's actions as banker and business advisor for his client. Questions pertaining to such activities are not precluded by the attorney work-product privilege. As stated by this court in *United States v. Davis*, 636 F.2d 1028 (5th Cir.1981):

> Financial transactions between the attorney and client, including the compensation paid by or on behalf of the client ... are not within the privilege except in special circumstances not present here. An attorney who acts as his client's business advisor, or his agent for receipt or disbursement of money or property to or from third parties ... is not acting in a legal capacity, and records of such transactions are not privileged.

*Id.* at 1044 (citations and footnote omitted).

Finally, we hold that the district court did not err in denying an *in camera* hearing to the appellant. We find appellant's argument to the contrary to be meritless. Accordingly, the district court's contempt order is AFFIRMED.